UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMIE EARL MCCASKILL,

    Petitioner,                             Civil No. 2:16-CV-11352
                                             HONORABLE VICTORIA A. ROBERTS
v.                                          UNITED STATES DISTRICT JUDGE

RANDALL HAAS,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS***

Jimmie Earl McCaskill, ("Petitioner"), confined at the Macomb Correctional Facility in New Haven, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for armed robbery, M.C.L.A. § 750.529; felon in possession of a firearm, M.C.L.A. § 750.224f; and felony firearm, M.C.L.A. § 750.227b. The petition for writ of habeas corpus is DENIED.

### I. Background

Petitioner was convicted after a jury trial in Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F. 3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from the July 21, 2011 robbery of a CVS store located at 2590 W. Grand Boulevard in Detroit (the Grand Blvd. CVS). At

trial, the prosecution presented evidence that defendant was involved in a similar robbery on July 13, 2011, at another CVS store located at 18585 E. Warren Avenue in Detroit (the Warren Ave. CVS). There was evidence identifying defendant as one of the robbers in both robberies. Defendant maintained that he was mistakenly identified.

In the Grand Blvd. CVS robbery, defendant's accomplice ascertained that Myiea Summerour was a manager and then, after conversing with defendant in another aisle, both men walked back to her, defendant showed her a gun that he had tucked in his shorts, and defendant told her to take the other man back to the safe. Noelle Beasley, who was in the back, opened the safe and gave the man $5,373. Meanwhile, defendant stopped Kenyetta Marshall when she observed what was happening and told her not to move, showing her the imprint of the gun on his hip and stating that it was not her money. After the robbers left, Summerour called 911.

Both Marshall and Beasley were unable to identify defendant in a photographic lineup, which was not shown to Summerour. Beasley identified someone else. In a subsequent live lineup, Beasley could not identify defendant, and Marshall picked someone else, but Marshall identified defendant at trial as the person who stopped her. Summerour picked defendant out of a live lineup and identified him at trial. However, she had initially indicated that the perpetrator was shorter than defendant, stockier, and had a lighter complexion, and did not notice a lack of teeth.

In the Warren Ave. robbery, Carlos Chavez, the manager on duty, was called from the back room because defendant wanted to talk to him; defendant inquired whether CVS was hiring and, while defendant was subsequently filling out paperwork, he raised up his shirt, revealing a gun, and told Chavez that when he was done they were going to go to the back room and Chavez was going to give him money. Defendant also advised that he was with another man who was with an employee (Antonio Allen) in the photo department. As they walked to the office past the photo area, defendant held the gate for his accomplice and Chavez. Allen said that defendant stayed with him and showed him a bulge under his shirt. Chavez said that when he and the other man reached the office, he gave the other man all the cash he had, that the man left the office, and that he watched him and defendant leave the store. Allen then called 911.

Chavez identified defendant in a photographic lineup, but Allen was unable to do so. Both Chavez and Allen identified defendant in a live lineup. Chavez

indicated that the perpetrator had a black mustache, did not note any gray, even though defendant had gray in his goatee at the time of the photo and live lineup, and said that he had "some teeth"; at the preliminary examination, he had said that the perpetrator's teeth were "normal." Allen said he did not notice if the person did or did not have teeth.

*People v. McCaskill*, No. 318257, 2015 WL 1069400, at * 1 (Mich. Ct. App. Mar. 10, 2015).

Petitioner's conviction was affirmed. *Id., lv. den.* 498 Mich. 885, 869 N.W.2d 597 (2015).

Petitioner seeks a writ of habeas corpus on the following grounds: (1) Officer Roland Brown impermissibly invaded the province of the jury by offering opinion testimony that Petitioner was the person in the surveillance video and photographs of the video and that Ms. Beasley was wrong when she identified someone else as the perpetrator; trial counsel was ineffective for eliciting Officer Brown's damaging testimony, and (2) Petitioner was prejudiced by the admission of other acts testimony involving an unrelated robbery.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved

> an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

4

disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.,* at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

The Michigan Court of Appeals reviewed and rejected the first part of Petitioner's first claim and his second claim under a plain error standard because Petitioner failed to preserve the issues as a constitutional claim at the trial court level.

In *Fleming v. Metrish,* 556 F.3d 520, 532 (6th Cir. 2009), a panel of the Sixth Circuit held that the AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. In a subsequent decision, the Sixth Circuit held that that plain-error review is not equivalent to adjudication on the merits, so as to trigger AEDPA deference. *See Frazier v. Jenkins*, 770 F. 3d 485, 496 n. 5 (6th Cir. 2014). The Sixth Circuit noted that "the approaches of *Fleming* and *Frazier* are in direct conflict." *Trimble v. Bobby*, 804 F.3d 767, 777 (6th Cir. 2015). When confronted by conflicting holdings of the Sixth Circuit, this Court must follow the earlier panel's holding until it is overruled by the United States Supreme Court or by the Sixth Circuit sitting *en banc*. See *Darrah v. City of Oak Park,* 255 F.3d 301, 310 (6th Cir. 2001). The AEDPA's

5

deferential standard of review applies to these claims, even though they were reviewed only for plain error.

### III.

**A. Claim # 1. Police testimony invaded the province of the jury; ineffective assistance of counsel.**

Petitioner argues that Officer Roland Brown invaded the province of the jury by offering lay opinion testimony that Petitioner was guilty. Petitioner claims that Officer Brown improperly identified Petitioner from still photographs and a surveillance video as the perpetrator and opined that a witness who failed to identify Petitioner was wrong. Petitioner argues that trial counsel was ineffective for eliciting this testimony from Officer Brown.

Respondent argues that the first part of Petitioner's claim is waived and procedurally defaulted because defense counsel elicited the testimony from Officer Brown. Petitioner argues that trial counsel was ineffective for eliciting this testimony. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claim, it would be easier to consider the merits of this claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

Defense counsel elicited the testimony from Officer Brown during cross-examination. The first exchange was:

[Def. Counsel]: Okay. But sir, is it fair to say that you made a determination that it was Mr. McCaskill after viewing said videos and stills?

[Off. Brown]: Yes. Afterwards, yes.

(Tr. 7/25/13, pp. 68-69).

Later, the following exchange occurred:

[Def. Counsel]: I know. And people can be right or wrong; correct?

[Off. Brown]: Correct.

[Def. Counsel]: Cause you felt that Noelle Beasley was wrong; correct?

[Off. Brown]: She was wrong.

[Def. Counsel]: She could have been right, though; right?

[Off. Brown]: No.

(*Id.*, p. 100).

Petitioner is not entitled to habeas relief on the first portion of his first claim for several reasons.

First, a defendant in a criminal case cannot complain of error which he or she invited. *See Shields v. United States*, 273 U.S. 583, 586 (1927). When a petitioner invites an error in the trial court, he or she is unable to obtain habeas corpus relief. *See Fields v. Bagley,* 275 F. 3d 478, 486 (6th Cir. 2001). Petitioner's counsel's questioning opened the door to Officer Brown's testimony about the surveillance video and his opinion that Ms. Beasley erred in identifying the wrong participant in the lineup. Petitioner invited the error here; he cannot obtain habeas relief.

7

Second, Petitioner is not entitled to habeas relief on his claim that Officer Brown offered improper lay opinion testimony, in violation of M.R.E. 701. It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000). Petitioner is not entitled to habeas relief on his claim that Officer Brown's testimony was impermissible lay opinion testimony. *See Charles v. Thaler*, 629 F. 3d 494, 500 (5th Cir. 2011).

Third, there is no clearly established law as determined by the Supreme Court which prohibits a police officer from offering an opinion regarding a criminal defendant's guilt or innocence.

In *Cooper v. Sowders*, 837 F.2d 284 (6th Cir. 1988), the Sixth Circuit held that it was fundamentally unfair and a violation of due process to permit a detective to testify as an expert witness that all the evidence linked the petitioner, and no one else, to the crime. The Sixth Circuit concluded that "[t]he opinion-testimony had a direct influence on the jury's consideration of petitioner's guilt or innocence." *Id.* at 287.

The Sixth Circuit's holding in *Cooper* does not entitle Petitioner to habeas relief for several reasons.

First, Officer Brown was not presented as an expert witness at Petitioner's trial. Secondly, the jury was instructed to jury to judge a police officer's testimony by the same standard as the testimony of any other witness. (Tr. 7/25/13, p. 175). These two facts alone distinguish Petitioner's case from the situation in *Cooper. See e.g. Norton v. Boynton,* No. No. 08–13200, 2011 WL 282433, * 8 (E.D. Mich. Jan. 26, 2011). Third, "*Cooper* was decided prior to Congress' adoption of the AEDPA...so the *Cooper* court owed no deference to the state court decision on these issues." *Dorsey v. Banks*, 749 F. Supp. 2d 715, 758 (S.D. Ohio 2010). The judge in *Dorsey* indicated that he was "unable to locate a single case decided by the Sixth Circuit Court of Appeals, apart from *Cooper*, where a prosecutor's questioning of a law enforcement officer about the truthfulness of a witness led to the grant of a writ of habeas corpus." *Id.* Given the lack of holdings by the Supreme Court on the issue of whether a police officer can offer an opinion as to a criminal defendant's guilt or innocence, the Michigan Court of Appeals' rejection of Petitioner's claim was not an unreasonable application of clearly established federal law. See *Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 (2006). Petitioner is not entitled to habeas relief on this portion of the first claim.

Petitioner argues that trial counsel was ineffective for eliciting this testimony from Officer Brown. The Michigan Court of Appeals rejected the claim:

> It appears that the purpose underlying the cross-examination of Officer Brown was to show that his investigation was compromised because he did not consider other leads and focused only on defendant. Counsel established that Officer Brown zeroed in on defendant, relying on an anonymous tip and other witness identifications, while ignoring that Beasley identified someone else

9

> in a photo lineup, that Marshall was unable to identify defendant from the photos, and that a photograph was not taken of the live lineup which would have showed whether the other participants looked similar to defendant. Thus, in context, it appears that counsel's strategy was to establish that the information Officer Brown had identifying defendant as the perpetrator was weak, and his focus on defendant blinded him to other viable leads regarding the true perpetrator. Defendant has not overcome the presumption that this was a reasonable trial strategy.

*People v. McCaskill*, 2015 WL 1069400, at * 3.

To show that he or she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have

been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). A reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 563 U.S. 170, 196 (2011).

Counsel's first question to Officer Brown regarding his belief that Petitioner was the suspect after viewing the surveillance videotape and the photographs was part of counsel's attempt to impeach Officer Brown's testimony. Defense counsel phrased the question of Petitioner's guilt in the terms of "you made a determination," connecting Officer Brown's objectivity and credibility to the results of the investigation. Counsel then challenged Officer Brown's credibility through questions about another potential suspect, "Thomas Brown," that Noelle Beasley identified. Officer Brown denied investigating his other suspect, but counsel was able to undermine the concept that Petitioner was the only suspect to the robbery. (Tr. 7/25/13, pp. 70-72). If counsel had not questioned Officer Brown about the video as the basis of Officer Brown's belief that Petitioner was the suspect, the impeachment opportunity would have never arisen. Counsel employed a reasonable strategy in attempting to challenge Officer Brown's investigation by suggesting that there were other potential suspects.

Counsel's second question attempted to suggest an inference that Officer Brown was biased. Officer Brown testified he did not tell the witnesses which person to choose from the lineup. Counsel's questioning then established that witnesses could be right or wrong during the identification process, but that Officer Brown made his own independent determination that witness Noelle Beasley was "wrong." (*Id.*, pp. 99-100).

Counsel argued in summation that the entire case was built off of Officer Brown's subjective determinations rather than evidence or facts. (*Id.*, pp. 151, 156-57).

Counsel's performance in eliciting allegedly prejudicial testimony from Officer

Brown against Petitioner was not deficient, so as to support Petitioner's ineffective assistance of counsel claim; the questions were part of a legitimate strategy to cast doubt on the prosecution's case or of the witnesses who testified. *See Campbell v. U.S.*, 364 F.3d 727, 734-35 (6th Cir. 2004); *See also Urban v. Ohio Adult Parole Auth.*, 116 F. App'x. 617, 622 (6th Cir. 2004)(counsel's eliciting from state witness during cross-examination in criminal proceedings for Medicaid fraud that defendant acted inappropriately and had improperly billed witness's girlfriend for medical services that were never performed was reasonable trial strategy; counsel's cross-examination of the witness was an attempt to portray the witness as biased).

Counsel's questions to Officer Brown did not prejudice Petitioner, because there was substantial evidence to support Petitioner's conviction. Ms. Summerour, the CVS manager who spent the longest time with the gunman during the robbery, positively identified Petitioner as the perpetrator at a live lineup and at trial. Ms. Marshall positively identified Petitioner at trial as one of the perpetrators. Two victims from a similar robbery identified Petitioner as the perpetrator of that crime. The evidence against Petitioner was compelling; Petitioner is unable to show that he was prejudiced by the counsel's elicitation of damaging information from Officer Brown. *See Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002). Petitioner's first claim is meritless.

### B. Claim # 2. The other acts evidence claim.

Petitioner argues that the admission of the other acts evidence involving the Warren Avenue CVS robbery violated his right to a fair trial.

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting evidence of his other armed robbery is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003). Petitioner is not entitled to relief on his second claim.

### IV.  Conclusion

The Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability to Petitioner. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve

encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability; he failed to make a substantial showing of the denial of a federal constitutional right. *See Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

Although this Court denies a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is lower than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002).  While a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V. ORDER

**The Court DENIES** the Petition for Writ of Habeas Corpus and a Certificate of Appealability**.**

Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

S/Victoria A. Roberts  
United States District Judge

Dated: January 13, 2017